EDWARD A. THEURKAUF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15749.   Promulgated October 7, 1949.

*Earl Q. Kullman, Esq.*, and *William A. Sheehan, Esq.*, for the petitioner.

*Whitfield J. Collins, Esq.*, for the respondent.

532

BLACK, *Judge*: There is but one issue in this proceeding, and that is whether for income tax purposes Frances G. Theurkauf should be recognized in the taxable year 1944 as a partner in the partnership of F. A. Marsily & Co. The Commissioner does not dispute that a partnership under that name existed and he has recognized Frances G. Theurkauf and James E. Kearney as partners, but has refused to give recognition to the interest claimed by Frances and has taxed her claimed interest in the partnership profits to her husband, the petitioner herein. The Commissioner contends that the instant case is controlled directly by the Supreme Court's decision in *Commissioner* v. *Tower*, 327 U. S. 280, since Frances performed no services for the partnership and since, as he contends, she contributed no capital to it which originated with her. The respondent says in his brief: "Except for the modification of the partnership in 1941, this case is practically on all fours with *Commissioner* v. *Tower, supra.*" The Supreme Court stated the facts in the *Tower* case, in part, as follows:

In 1937 substantial profits pointed to increased taxes. Respondent's attorney and his tax accountant advised him that dissolution of the corporation and formation of a partnership with his wife as a principal partner, would result in tax saving and eliminate the necessity of filing various corporate returns. The suggested change was put into effect. August 25, 1937, respondent transferred 190 shares of the corporation's stock to his wife *on the condition that she place the corporate assets represented by these shares into the new partnership.* Respondent, treating the stock transfer to his wife as a gift valued at $57,000, later paid a gift tax of $213.44. Three days after the stock transfer the corporation was liquidated, a limited partnership was formed and a certificate of partnership was duly filed for record as required by Michigan law. According to the books, the value of the donated stock became the wife's contribution to the partnership. The formation of the partnership did not in any way alter the conduct of the business, except that both Amidon and Tower ceased to draw salaries. By an agreement made shortly thereafter, a readjustment was made in the amount of profits each partner was to receive, under which Amidon's share became the equivalent of, if not more than, the amount of the salary he had previously drawn. Under the partnership agreement the respondent continued to have the controlling voice in the business, as to purchases, sales, salaries, the time of distribution of income, and all other essentials. Respondent's wife, as a limited partner, was prohibited from participation in the conduct of the business. So far as appears, the part of her purported share of the partnership business she actually expended was used to buy what a husband usually buys for his wife such as clothes and things for the family or to carry on activities ordinarily of interest to the family as a group. [Italics supplied.]

In *Francis E. Tower*, 3 T. C. at page 401, we made a finding of fact as follows:

The gift of 190 shares of the corporate stock of the R. J. Tower Iron Works, Inc., made by petitioner to his wife in 1937 was not valid and complete in that the wife did not gain full dominion and control over the shares. * * *

Based upon this finding of fact, in our opinion in the *Tower* case, at page 404, we said:

Here, the transfer of the corporate stock by petitioner to his wife was more fanciful than actual, since there was no purpose to transfer the stock to her apart from the agreed plan that the gift would determine her interest in the partnership. The gift, however, was not an absolute and unconditional one. Its purpose and intent was not to vest absolute dominion over the shares in the wife, since she had no untrammeled freedom in their disposition and they were not subject to her own control and desires.

In view of the fact that the gift of the corporate stock by petitioner to his wife was not valid nor complete, it follows that she made no capital contribution to the partnership, and, since she admittedly rendered no services, it must be held that she was not a bona fide partner.

We think the facts in the instant case are distinguishable from those present in the *Tower* case, *supra*. As pointed out by the Supreme Court in the portion of its opinion from which we have quoted above and by our findings of fact in the *Tower* case, Tower transferred 190 shares of the corporation's stock to his wife on the condition that she place the corporate assets represented by these shares into the partnership business. There was no such condition attached to the gift in the instant case. Petitioner testified that, when on or about October 9, 1936, he made a gift to his wife of one-half of the stock of the F. A. Marsily & Co., no conditions whatever were attached to the gift, and that it was his intention to make the gift complete and irrevocable. On the strength of petitioner's testimony, we have made a finding in our findings of fact that his gift of the stock to his wife was made "with intent to vest full, complete, and irrevocable legal ownership of the stock in Frances G. Theurkauf," and that "she thereupon became the owner of the shares covered by the certificate issued to her and no conditions or limitations were attached to her ownership of them."

Under these facts, when subsequently on October 31, 1936, by agreement between Theurkauf and his wife Frances, the sole stockholders of F. A. Marsily & Co., the corporation of F. A. Marsily & Co. was liquidated and dissolved and its assets were transferred by the corporation, joined by petitioner and Frances as the sole stockholders of the corporation, to the new partnership of F. A. Marsily & Co., Frances made a contribution of capital to the partnership which belonged to her and she became a partner and was the owner of the interest which it was agreed she should have in the written partnership agreement. If this was true, as we think it was, in the organization of the first partnership on November 1, 1936, it would certainly be true in 1941, when the old partnership was dissolved because of the retirement of one of the partners, Peter Albert. It is the partnership organized in 1941, five years after the dissolution of the old corporation, with which we are presently concerned.

As we have already stated, the Commissioner relies heavily upon the Supreme Court's decision in the *Tower* case, *supra*. In our opinion the substance of the Supreme Court's decision in the *Tower* case was that the test in determining the bona fide character of a family partnership is to ascertain whether the partners really and truly intended to join together for the purpose of carrying on a business and sharing its profits, or whether the partnership was a mere sham, utilized for the purpose of reducing a taxpayer's true tax liability by a pretended distribution of income. Such, in our view, is the interpretation given to the *Tower* case in the recent decision of the Supreme Court in *Commissioner* v. *Culbertson*, 337 U. S. 733. In the *Culbertson* case the Supreme Court said:

The Tax Court's isolation of "original capital" as an essential of membership in a family partnership also indicates an erroneous reading of the *Tower* opinion. We did not say that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all family trusts are invalid for tax purposes in *Helvering* v. *Clifford, supra*. The facts may indicate, on the contrary, that the amount thus contributed and the income therefrom should be considered the property of the donee for tax, as well as general law, purposes. * * *

In the instant case we think the facts do show that the amount of capital which Frances contributed to the partnership and her agreed percentage of the partnership profits should be considered her property for tax as well as other purposes. We have so found.

The Supreme Court also said in the *Culbertson* case:

* * * If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient. * * *

The instant case was heard and the briefs were filed before the Supreme Court decided *Commissioner* v. *Culbertson, supra*, but, of course, we must take notice of the Supreme Court's decision in this later case. We think that, under the facts as detailed in our findings of fact and under the rationale of the Supreme Court's decision in the *Culbertson* case, Frances should be recognized as a partner in the partnership of F. A. Marsily & Co. See *O. H. Delchamps*, 13 T. C. 281.

The evidence in this case does not show affirmatively that Mrs. Theurkauf was paid or credited with her share of the 1944 profits of the business amounting to $7,833.43. However, the Commissioner made no point either at the hearing or in his brief that she was not paid or credited with her share of the profits. Apparently she has been recognized as a partner in the business for several years and we have no reason to believe that she was not credited or paid her share of the profits from time to time.

As we said at the beginning of this opinion, respondent bases his entire contention that Frances was not a partner in the business during 1944 on the fact that she did not render any services to the business and did not, to use his language, "contribute any capital which originated with her," relying strongly on the *Tower* case, *supra*. For reasons already stated, we think the *Tower* case is not applicable to the facts of the instant case.

Petitioner and the other active partner, James E. Kearney, were paid salaries commensurate with the value of their services to the partnership. Petitioner was paid $500 per month for his services, and Kearney was paid $75 a week for his services. Petitioner has reported for taxation $13,833.42 as his income from the partnership. This includes his salary of $6,000 and $7,833.42 as his share of the partnership profits. For reasons we have stated above, we hold that petitioner is not taxable on the $7,833.43 of the profits of the partnership which belonged to his wife under the partnership agreement. On this issue the Commissioner is reversed.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

DISNEY, *J.*, dissenting: The conclusion of the majority that a partnership should be recognized between petitioner and his wife is, in my opinion, contrary to the essential concepts of the Supreme Court on the subject. It is based upon three facts only: (a) Contribution of capital interest by the wife after gift thereof by the petitioner, made after he had decided to change the form of business from corporation to partnership; (b) partnership agreement providing that the wife should receive a percentage of the profits; and (c) the provision that the husband should be managing partner and liquidator upon dissolution. From these facts and nothing more, so far as I am able to discern, the majority announces the ultimate fact of bona fide partnership, so intended. It will be noted that there is no finding of fact that the wife ever actually participated in the partnership profits, or that she was to pay any share of partnership losses—an obviously logical requirement of good faith partnership—or that she ever exercised any control over her capital contribution. On the contrary, it is found that she at no time rendered any services to the partnership. Under such facts, it is my view that the conclusion of bona fide partnership, so intended, is not only without foundation in the facts, but contrary thereto and contrary to requirements set both by logic and by the Supreme Court, as expressed in *Commissioner v. Tower*, 327 U. S. 280, and *Commissioner v. Culbertson*, 337 U. S. 733.

In the light of the principal fact relied upon by the majority, that is, the fact of capital contribution by the wife, we note that in the *Tower* case the Supreme Court said:

* * * The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. A person may be taxed on profits earned from property, where he neither owns nor controls it. *Lucas* v. *Earl,* supra. The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot be decided simply by looking at a single step in a complicated transaction. To decide who worked for, otherwise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. * * *

Yet here the majority obviously overemphasizes, if indeed it does not give controlling effect to, the fact of capital contribution by the wife—to say nothing of neglecting the fact that the gift to her was made by the petitioner after his decision to change the business from corporation to partnership. The fact of ownership by the wife of her contribution seems in the mind of the majority to determine the taxability, though in the *Tower* case, as above seen, the petitioner may be taxed on profits earned from property though he neither owns it nor controls it, under the doctrine of *Lucas* v. *Earl*, 281 U. S. 111, and other cases. The majority do not follow but disregard the concept: "The issue is who earned the income * * *," as expressed in the *Tower* case, and, as expressed in the *Culbertson* case, "that income must be taxed to him who earns it"—citing, *inter alia, Lucas* v. *Earl, supra,* and *Helvering* v. *Clifford*, 309 U. S. 331. As if to stress the point, the Court immediately concludes: "Furthermore, our decision in *Commissioner* v. *Tower, supra,* clearly indicates the importance of participation in the business by the partners during the tax year." Yet here the majority seems to regard participation in the business and earning of the income by the wife as unnecessary elements, since they find only that she contributed capital and had a right to income.

The *Culbertson* case also enumerates among facts to be considered "the actual control of income and the purposes for which it is used"; again, it notes that "the family relationship often makes it possible for one to shift tax incidence by surface changes of ownership without disturbing in the least his dominion and control over the subject of the gift or the purposes for which the income from the property is used"; and that in the *Tower* and *Lusthaus* cases that Court "distinguished between active participation in the affairs of the business by the donee of a share in the partnership on the one hand and his passive acquiescence to the will of the donor on the other." Here, however, the majority, despite the fact that the partnership agreement provides that the petitioner should be managing partner and liquidator upon dissolution, and that the wife at no time rendered any services to the partnership, discusses not at all the question whether the petitioner

had dominion and control over the subject matter of his gift to the wife or whether she participated in the partnership business. In short, though the *Culbertson* case forbids a conclusion of partnership upon a test merely of contribution of capital, the majority, I submit, make that test and make it controlling. This seems peculiarly illogical in this case, where it is found that the capital contributed by both husband and wife was $29,710.03 (to the new partnership in 1941), whereas the partnership income ascribed by the Commissioner to the petitioner for 1944 was $21,666.85. The capital appears, therefore, as a minor element in the production of income, no doubt due to the fact that the business was that of commission merchant, selling agent, and factor. In some businesses, e. g., lending money, the capital contribution might be the most important element, and I see a difference in the weight ascribable to capital, dependent upon the nature of the business, under the concept of the Supreme Court. Here, logic indicates it is of little weight, yet by the majority it is allowed not only to obscure the question of control by the husband, but to control completely. No inquiry is made as to whether the petitioner retained dominion and control over the gift of capital made to his wife or as to her "passive acquiescence" to his will; the reason rather clearly being that the facts found that the wife rendered no services and that he was manager indicate, if they do not prove completely, such passive acquiescence by her to his will.

I do not mean that such lack of participation or any other element is controlling; but I do affirm that the Supreme Court requires consideration of:

* * * all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent— * * *

and that here the majority not only fail to do so, but disregard elements considered by the Supreme Court as requisite to a sound examination as to where partnership profits are taxable, and that it so appears on the face of the opinion, and that no examination is made as to whether the petitioner by the arrangement made was able "to shift tax incidence by surface changes of ownership without disturbing in the least his dominion and control over the subject of the gift or the purposes for which the income from the property is used," or whether the petitioner was able "to retain 'the substance of full enjoyment of all the rights which previously he had in the property,' " but that, on the contrary, the fact of capital contribution placed in a partnership is made to control.

In the *Culbertson* case the Supreme Court, referring to the alleged partner, says: "Whether he is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation

in the enterprise." I am not unconscious of the fact that the majority state the ultimate fact that: "The partnership of F. A. Marsily & Co. was a bona fide partnership and was so intended by the three partners * * *"; also that the formation of the partnership "was motivated solely by business reasons relating to the welfare and credit standing of the partnership business"; and again that in the syllabus it is stated that petitioner's wife, having made a valid contribution of capital of which she was the full and legal owner, "and it having been the bona fide intention of the partners to carry on a partnership," the wife should be recognized as a partner. Logic seems to require, however, that such ultimate facts or conclusions must rest upon the facts which alone are stated in the findings, and that beyond that point they are mere fiat. We are required to find the facts. Those here found do not justify the ultimate findings and conclusions, if, in truth, the basic question here is "who earned the income," and, in my view, the Supreme Court requires of us, in search for reality of partnership, consideration of elements lacking or negatived in the findings here. The result here is, in my opinion, a violation of the injunction of the Supreme Court that no single test, such as contribution of capital, be made conclusive.

I realize too that the opinion recites that the Commissioner made no point of the fact that the wife was not paid or credited with her share of the profits, and that: "Apparently she has been recognized as a partner in the business for several years and we have no reason to believe that she was not credited or paid her share of the profits from time to time." This is, of course, reversal of burden of proof and unwarranted assumption, and the failure of the Commissioner to dwell upon the lack of payment of profits to the wife is, in my view, no buttress for a general conclusion with so frail a foundation as here appears, or reason why we should jettison essential requirements of logic set by the Supreme Court on this question. Believing that the majority opinion affirmatively shows that it fails to comply with the concepts of the Supreme Court on this subject, I respectfully dissent.

MURDOCK, TURNER, ARNOLD, HILL, and HARRON, *JJ.*, agree with this dissent.